## Am Ende *v.* Seabury *et al.*

*(Circuit Court, S. D. New York. November 15, 1888.)*

1. PATENTS FOR INVENTIONS—SPECIFICATIONS—CERTAINTY.
Letters patent No. 181,024, issued August 15, 1876, to Charles G. Am Ende, for an improvement in borated cotton, describe the process as follows: "I first prepare a solution of boracic acid, in the usual manner, and add thereto a small proportion of glycerine. * * * The cotton, either in bulk or wadding, is next immersed in the solution until well impregnated therewith, and then pressed, to discharge all surplus solution, or so much thereof as may be required. The cotton is then dried, and ready for use." *Held,* that while the directions contained in this specification might seem vague and indefinite to a person not skilled in chemistry, they were sufficiently clear to be comprehended by persons skilled in the art to which the patent relates, which is sufficient.

2. SAME—ANTICIPATION.
*Held,* also, that none of the journal articles in evidence anticipate said patent, as none of them indicate the use of cotton saturated with a solution of boracic acid and glycerine in the manner described in the specification.

In Equity. Bill for infringement of patent, brought by Charles G. Am Ende against Seabury & Johnson.

*Arthur V. Briesen,* for complainant.

*Norman T. M. Melliss,* for defendants.

COXE, J. The complainant is the owner of letters patent No. 181,024, granted to him August 15, 1876, for an improvement in borated cotton.

The object of the inventor was to produce a simple and inexpensive antiseptic dressing by combining the various advantages of cotton fiber with those possessed by boracic acid and glycerine. The specification asserts that prior to the invention boracic acid had been used as a preservative agent only in a fluid state or as a powder, and that it was necessary to immerse the matter to be preserved in the fluid, or cover it completely with the powder, requiring, in either case, large quantities of the acid. The inventor accomplishes a better and more permanent result in a much simpler and more convenient way by saturating the cotton with the acid and glycerine in small proportions; thus adding to their preservative properties the germ-filtering quality and elasticity of the cotton. The manner of producing the borated cotton is described in the specification as follows:

"I first prepare a solution of boracic acid in the usual manner, and add thereto a small proportion of glycerine. For the preservation of tender substances, such as veal, I may also add from 10 to 40 per cent. of soda or potash, never sufficient, however, to reach neutrality. The cotton, either in bulk or wadding, is next immersed in the solution until well impregnated therewith, and then pressed, to discharge all surplus solution, or so much thereof as may be required. The cotton is then dried, and ready for use."

The claim is for "the borated cotton, being cotton fiber which is saturated with boracic acid and glycerine, substantially as herein shown and described." The defenses are that the specification is not so clear and explicit as to enable a person skilled in the art to practice the invention, and that the patent is void for lack of novelty. Infringement is clearly established, and is not denied in the brief submitted for the defendants. In considering the question presented by the first defense it should be remembered that the language criticised by the defendants is addressed to persons skilled in the particular art to which it relates. To a lawyer or a banker the specification might seem vague, and, perhaps, meaningless; but a pharmacist, a chemist, or even an educated physician would have little difficulty in understanding it. When the patentee says he prepares a "solution of boracic acid in the usual manner," he means as it has formerly been prepared. He speaks of it as he would speak of a solution of camphor or alum. Every druggist knows what he means. He certainly might have been more definite when he says that he adds to this solution "a *small* proportion of glycerine," but it is thought that the intelligent chemist, setting out properly to combine the enumerated ingredients into which the cotton is to be immersed, and with which it is to be impregnated, could hardly go astray. Indeed, in examining the extracts introduced by the defendants to establish lack of novelty, copied from pharmaceutical journals of conceded reputation and authority, we find similar language used. Thus, in the Druggists' Circular and Chemical Gazette it is stated that Dr. Edmunds had used "a solution of boracic acid," and in the Journal de Pharmacie it appears that Prof. Gubler saturated his wadding with "a *certain* quantity of glycerine." The formula for preparing this dressing is then given. "It is only necessary," says the writer, "to pour a *small* quantity of glycerine

over the square sheet," etc. Such expressions would seem to belong to the nomenclature of the art. The expression "well impregnated" means thoroughly, completely impregnated; the word "well" being used in the sense that a housewife might use it when telling her domestic to keep the bread or the joint in the oven until *well* done. Tested by the rule of *Loom Co.* v. *Higgins,* 105 U. S. 580, the specification would seem to be sufficient.

The article translated from the Journal de Pharmacie et de Chimie is not an anticipation. It is entitled "Glycerized cotton, for dressing wounds." There is no reference to boracic acid. Two of the elements of Am Ende's combination, boracic acid and water,—the acid in solution,—are wanting. True, it is stated that Prof. Gubler found this wadding permeable to all medicinal liquids, but there is no hint that he knew that with it could be combined the preservative properties of boracic acid in an uncrystalized condition as a convenient, effective, and permanent antiseptic composition. The article in the American Journal of Pharmacy of March, 1867, shows great familiarity with the characteristics and uses of glycerine on the part of the writer. He knew its excipient, hygroscopic, and penetrating properties. He knew that it was a solvent for boracic acid, but he certainly did not know—at least he did not divulge the knowledge—that it could be combined with dissolved boracic acid, and thus held in cotton fiber for antiseptic purposes. The quotation from the Druggists' Circular of June, 1875, is entitled "Boracic Acid," and describes a case of amputation in which the surgeon employed a "dressing of lint steeped in a hot saturated solution of boracic acid." This dressing was probably applied in a moist condition to the wound. No glycerine was used. It cannot be demonstrated from the proofs that any one, prior to Am Ende, accomplished what he has described and claimed. Even though there be a doubt, it should be resolved in favor of the patent. The fact that others had done something quite similar, that they had used separately, or in different combinations, the ingredients of his claim, should not affect his patent. All that is described in the prior publications the defendants may use with perfect impunity. They may use "lint steeped in a hot saturated solution of boracic acid," or "wadding saturated with a certain quantity of glycerine," or boracic acid dissolved in glycerine; but they should not be permitted to use cotton saturated with a solution of boracic acid and glycerine in the manner described in the specification, for that belongs to Am Ende. The complainant is entitled to the usual decree.